OPINION
John L. Smith, defendant-appellant, appeals a judgment of conviction entered upon him in the Franklin County Court of Common Pleas finding him guilty of rape, a violation of R.C. 2907.02, kidnapping, a violation of R.C. 2905.01, and attempted rape, a violation of R.C. 2923.02 and 2907.02.
Appellant worked as a taxicab driver for Northway Transportation. In the early morning hours of September 15, 2000, appellant picked up a young woman ("victim") near the intersection of St. Clair and Leonard Avenues and agreed to take the victim home for $5. According to the victim, appellant later stopped the vehicle, got out, and demanded the victim let him into the backseat or he would kill her. The victim testified during appellant's trial that appellant first attempted to put his penis in her mouth and then vaginally raped her. Appellant claims that he and the victim had consensual oral and vaginal sex after he paid her $20. Appellant claims he paid the victim $20 after she talked about being a prostitute and selling herself.
On April 12, 2001, the jury found appellant guilty of attempted rape, rape, and kidnapping. The trial court sentenced appellant to serve five years for each conviction, requiring appellant to serve the three sentences concurrent to each other. Appellant appeals his convictions, and presents the following six assignments of error:
 I. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
 II. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE EVIDENCE AGAINST THE APPELLANT WAS INSUFFICIENT TO SUSTAIN A JURY VERDICT OF GUILTY.
 IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 V. THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO USE OF PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY FASHION, THEREBY DENYING DEFENDANT-APPELLANT EQUAL PROTECTION UNDER THE LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 VI. TRIAL COUNSEL WAS INEFFECTIVE BY HIS FAILURE TO ATTACK THE TESTIMONY OF WITNESS-VICTIM * * * IN REFERENCE TO HER IMPEACHABLE TESTIMONY, PURSUANT TO EVIDENCE RULES 607 (A) AND 613 (A) AND (B).
Appellant argues in his first assignment of error that he was denied his right to a fair trial due to prosecutorial misconduct. Appellant claims the prosecutor made improper comments during closing arguments that unfairly prejudiced him.
Prosecutorial misconduct may so infect a trial with unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo (1974), 416 U.S. 637, 643, 94 S.Ct. 1868, 1871. In order to constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. Greer v. Miller (1987), 483 U.S. 756, 765,107 S.Ct. 3102, 3109. "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Nields (2001),93 Ohio St.3d 6, 37. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." State v. Treesh (2001), 90 Ohio St.3d 460, 464, certiorari denied, 533 U.S. 904, 121 S.Ct. 2247.
Appellant argues that during closing arguments, the prosecutor commented that the victim's blood was found inside appellant's cab. Appellant contends that this was inaccurate because the expert witness, Debra Lambourne, a criminalist with the Columbus Police Crime Laboratory, testified that she was "unable to exclude [the victim] as a possible contributor." The prosecutor stated the following during closing arguments: "[S]he unlocks the doors. Gets in, and a struggle ensues. That's when she gets punched. That's when she gets bit on her finger. That's when her blood ends up in that cab."
"[T]he State is entitled to a certain degree of latitude during closing arguments and is free to draw reasonable inferences from the evidence presented at trial, which may be commented on during closing argument." State v. Saxton (Mar. 7 , 2002), Hamilton App. No. 9-2000-88, unreported. In the present case, Detective Jackson, a detective with the Columbus Police Crime Scene Unit, testified he found a blood stain in the backseat of appellant's cab. Detective Jackson took a sample of the blood stain and submitted it to a laboratory to be tested.
Lambourne testified concerning her analysis of the blood stain found in the backseat of appellant's cab. Lambourne stated that she can take a biological fluid such as blood, compare it to known samples, and estimate whether or not that person could be included or excluded as the originator of the biological fluid. She testified that "the six areas of DNA that we looked at [in the blood sample] were pretty much consistent with the victim except for * * * an unknown marker which showed up." Because of the "unknown marker," Lambourne stated that they were "unable to exclude [the victim] as a possible contributor" of the blood stain found in the backseat. However, she further stated that "[a]ll of the markers that I found in her blood standard are present in the markers I found from the blood sample." Lambourne further stated that the analysis showed that the blood sample "couldn't be [appellant's] blood."
Evidence was also presented concerning the victim's injuries. Photographs were taken of the victim while she was at Riverside Hospital the morning of the alleged crime. Two photographs show an open cut on the victim's finger. A medical report from the hospital noted the victim had a bite mark on her left index finger. The victim testified during appellant's trial that when she fought back, appellant "started punching me in my face, and he bit me on my finger."
A review of the evidence shows a reasonable inference could have been made concerning whether the victim's blood was in the backseat of appellant's cab. Additionally, a review of the complete statement by the prosecutor shows the prosecutor was not attempting to introduce evidence not produced during trial. Instead, the prosecutor was providing a narrative based upon the victim's testimony. Even if the prosecution's statement "[t]hat's when her blood ends up in that cab" could be construed as improperly admitting evidence not introduced during trial, the trial court instructed the jury: "[C]losing arguments of counsel are designed to assist you but they are not evidence." "[A] presumption exists that a jury has followed the instructions given to it by the trial court." State v. Kasser (Nov. 29, 2001), Franklin App. No. 01AP-260, unreported. Accordingly, we find that the prosecutor did not commit misconduct in this instance.
Appellant contends the prosecutor committed misconduct by bolstering the victim's testimony by stating "[s]he was up front with you and told you that was, what was going on." Appellant also claims the prosecutor improperly bolstered the victim's testimony by stating that it was legal for the victim to drink beer even though she was twenty years old.
It is impermissible for a prosecutor to communicate his or her personal beliefs and opinions as to the credibility of a witness or the guilt of a defendant. State v. Geboy (Aug. 30, 2001), Logan App. No. 8-2000-36, unreported, discretionary appeal not allowed, 94 Ohio St.3d 1410, following State v. Smith (1984), 14 Ohio St.3d 13, 14. A review of the prosecutor's statement shows she did not interject her personal beliefs about the veracity of the victim's testimony, but merely argued to the jury that the evidence presented supported the theory that the victim did not lie or concoct the story.
The record also shows that the prosecutor was not attempting to bolster the victim's testimony by stating that it was "legal to drink beer when you are twenty." The reason for this is that the next statement by the prosecutor was: "It's illegal to smoke marijuana." The victim testified during the prosecution's direct examination of her that prior to the rape, she had been drinking beer and smoking marijuana. It would be illogical for the prosecution to bolster the victim's testimony by stating that it was legal to drink beer when you are twenty and then in the very next sentence undermine the victim's testimony by stating it is illegal to smoke marijuana. The more plausible explanation is that the prosecution meant to say that it was "illegal" to drink beer when you are twenty. Accordingly, we find that the prosecutor did not improperly attempt to bolster the victim's testimony.
Appellant next argues the prosecutor improperly alluded to the fact that appellant regularly had sexual relations with prostitutes. Appellant bases his argument on the prosecutor asking appellant whether it was general practice for him not to use a condom when he had sex with prostitutes since he did not use a condom when he had sexual intercourse with the victim. However, a review of the transcript shows appellant's counsel objected to the prosecutor's question and the trial court sustained the objection. At the end of the parties' presentation of the evidence, the trial court instructed the jury to disregard answers stricken by the court and to not speculate as to why an objection was sustained or what the answer to the question might have been.
Appellant contends that the prosecutor committed misconduct when she mentioned that appellant had been through training at the police academy. Appellant argues that "[w]hether or not [appellant] ever attended the police academy was not mentioned in any of the evidence." However, appellant testified during direct examination that he had been a police officer and a corrections officer. Therefore, it is difficult to see how the prosecutor's statement that appellant had been trained at the police academy was overly prejudicial when appellant had already testified that he had been a police and corrections officer.
Accordingly, appellant has failed to prove that he was denied his right to due process based upon the conduct of the prosecutor. We find the prosecutor did not commit prosecutorial misconduct based upon the actions presented by appellant in his assignment of error. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that his convictions were not supported by the manifest weight of the evidence. Appellant argues in his third assignment of error that the evidence was insufficient to sustain a jury verdict of guilty. We will first address appellant's third assignment of error.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." State v. Smith (1997), 80 Ohio St.3d 89, 113, certiorari denied (1998),523 U.S. 1125, 118 S.Ct. 1811. In reviewing a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Twyford (2002), 94 Ohio St.3d 340, 354. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied, 525 U.S. 1077,119 S.Ct. 816.
R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct includes vaginal intercourse between a male and a female and fellatio. R.C. 2907.01(A). Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1). In State v. Schaim (1992), 65 Ohio St.3d 51, the Ohio Supreme Court stated:
 A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct * * *. Id. at paragraph one of the syllabus.
"As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." State v. Eskridge (1988), 38 Ohio St.3d 56, 59.
R.C. 2923.02(A) states that no person "shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(E) provides that whoever "violates this section is guilty of an attempt to commit an offense" which is "an offense of the next lesser degree than the offense attempted." Attempted rape may be shown by evidence that a defendant attempted to penetrate the vagina or anal cavity, and for whatever reason, fails to do so, and makes contact only with the area near the vagina or anal opening. See State v. Wells (2001),91 Ohio St.3d 32, 35 (evidence that defendant attempted and failed to penetrate the victim's anus but made contact with the buttocks was sufficient for a finding of guilt on the crime of attempted rape).
In the present case, the victim testified that appellant stopped the vehicle in order to use the bathroom. The victim testified that appellant then walked to the back of the vehicle to the passenger door and became "real violent" when she refused to unlock the door. The victim stated that appellant told her "if you don't open this door, I am going to kill you." The victim testified that she "got scared" and opened the door. Appellant told her to lay down on the backseat, put his hands over her mouth, and told her if she said anything "I am going to kill you." The victim stated that when she started kicking appellant, he started punching her in the face and bit her finger. The victim further testified that appellant told her to put his penis in her mouth, and when she did not comply, he hit her and "tried to force [it] in my mouth" and put his penis on her lips. The victim also testified that after appellant was unable to force his penis in her mouth, appellant got on top of her, pulled her dress up, pushed her panties to the side, and had vaginal intercourse with her. The victim testified that she never gave appellant her consent to have oral or vaginal sex with her.
After a review of all of the evidence in the present case in a light most favorable to the state, we find that sufficient evidence was presented to sustain appellant's rape conviction. The state proved beyond a reasonable doubt that appellant purposely compelled the victim to submit to sexual conduct by force or threat of force. The victim's testimony established that appellant had vaginal intercourse with the victim against the victim's will. Additionally, the victim's testimony established that appellant used force and the threat of force in order to engage in sexual conduct with the victim. We also find that sufficient evidence was presented to sustain appellant's attempted rape conviction. The victim's testimony established that appellant attempted to compel the victim to submit to sexual conduct by attempting to make the victim perform fellatio through force and threat of force.
R.C. 2905.01(A) defines the offense of kidnapping and states in part that no person "by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." Sexual activity includes sexual conduct as defined in R.C. 2907.01(A). R.C. 2907.01(C).
In the present case, the victim testified that appellant drove her to a location other than the one she had requested. She also testified that "when he seen my hand trying to reach the door * * * that is when he got violent and started hitting me in my eye, and I tried to get him off me." After a review of all of the evidence in the present case in a light most favorable to the state, we find that sufficient evidence was presented to prove beyond a reasonable doubt that appellant restrained the liberty of the victim in order to engage in sexual activity.
Appellant also argues that his convictions were against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported, following Clemons, supra, at 444. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. Thompkins, supra, at 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), 527 U.S. 1042, 119 S.Ct. 2407.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001),93 Ohio St.3d 253, 263. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
While appellant points to inconsistencies in the victim's testimony, "a conviction is not against the manifest weight of the evidence merely because the trier of fact may have heard inconsistent testimony." State v. Crawley (Mar. 12, 2002), Franklin App. No. 01AP-532, unreported. A review of the evidence shows that many aspects of the victim's testimony were supported by corroborating evidence.
The victim testified that appellant forced her to have vaginal intercourse in the backseat of the cab. The victim testified that appellant hit her in the face several times and bit her finger. Photographs of the victim show bruises on her face and an open wound on her finger. Blood was found in the backseat of appellant's cab. A DNA analysis of that blood showed that six markers matched the victim's DNA.
We note that a review of the record demonstrates that a jury could reasonably conclude that the victim's testimony was more credible than appellant's testimony. Appellant testified that the victim was distraught when he picked her up. Appellant claims the victim told him that her grandmother had just died and that she needed $20 for flowers for her grandmother. Appellant claims he "told her I couldn't just give her twenty dollars because I didn't know her," but agreed to have sexual intercourse with her for $20. Appellant testified that by having sex with the victim for $20, he "thought of myself trying to help somebody else."
Appellant testified that when he dropped off the victim, "I didn't see no bruises or none of this on this young lady." Appellant's trial counsel's explanation for the victim's injuries occurring after appellant was with the victim was that it "could have been a slap from [the victim's] mom and dad" even though no evidence was presented to support this theory.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See Smith, supra, at 114. Accordingly, we overrule appellant's second and third assignments of error.
Appellant argues in his fourth assignment of error that he was denied his right to effective assistance of counsel. Appellant claims that his counsel should have objected to numerous instances of prosecutorial misconduct.
"Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." State v. Lindsey (2000), 87 Ohio St.3d 479, 489, certiorari denied, 531 U.S. 838,121 S.Ct. 99, following Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064. "The burden rests upon appellant to show how counsel breached the duty to provide reasonable representation." State v. Lester (1998), 126 Ohio App.3d 1, 5. Additionally, appellant must show prejudice, demonstrating that but for counsel's errors, the result of the proceedings would have been different. State v. Monroe (Sept. 25, 2001), Franklin App. No. 01AP-275, unreported.
Appellant claims that his counsel should have objected when the prosecutor: (1) misled the jury by stating that the blood found in appellant's cab belonged to the victim; (2) bolstered the credibility of the victim by claiming she did not break the law by drinking when she was twenty years old; (3) stated that the victim was upfront with the jury; (4) expressed her opinion as to appellant's guilt; and (5) referred to matters outside the record including appellant's police training and prior experiences with prostitutes. Based upon our findings in appellant's first assignment of error that the prosecutor did not commit prosecutorial misconduct in these instances, we find that appellant cannot show that his counsel was ineffective in these instances. Appellant's fourth assignment of error is overruled.
Appellant argues pro se in his fifth assignment of error that he was denied his constitutional rights because the trial court allowed the state to use peremptory challenges in a racially discriminatory fashion. Appellant claims his trial counsel was ineffective for failing to make a Batson objection prior to the swearing in of the jury.
"The Equal Protection Clause of the Fourteenth Amendment strictly prohibits a state actor from engaging in racial discrimination in exercising peremptory challenges." State v. Murphy (2001),91 Ohio St.3d 516, 528, following Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712. In order to prove a constitutional violation, appellant needed to show at trial that the jury selection process systematically excluded members of a distinctive group. State v. Herring (2002),94 Ohio St.3d 246, 258.
A review of the record shows that in the present case, there is no evidence that African Americans were systematically excluded from appellant's prospective jury panel. Additionally, we note that appellant "offered no evidence of discriminatory intent. The burden of proving intentional racial discrimination was his." Murphy, supra, at 530. Accordingly, we find that appellant was not denied his right to equal protection based upon the state's use of a peremptory challenge. Appellant's fifth assignment of error is overruled.
Appellant argues pro se in his sixth assignment of error that his trial counsel was ineffective for failing to adequately attack the testimony of the victim. Appellant claims that his trial counsel did not object enough times during the victim's testimony.
"Ohio courts have consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." Monroe, supra. Trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85. "[M]ere failure to make objections which seem appropriate after the fact does not establish prejudicial error as a deprivation of theSixth Amendment right to counsel." State v. Hunt (1984), 20 Ohio App.3d 310,311.
After having reviewed the record and appellant's arguments, we find that appellant has failed to show that his counsel was ineffective for failing to object more often during the victim's testimony. Appellant's sixth assignment of error is overruled.
Accordingly, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and BOWMAN, J., concur.